**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ALL STAR ELECTRIC, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-1533-WBV-JCW** |
| **EAGLE ACCESS, LLC, ET AL.** | **SECTION D(2)** |

## ORDER

Before the Court is Defendant Eugene Sak's Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 9), Plaintiff All Star Electric, Inc. ("ASE")'s Response in Opposition (R. Doc. 10), and Defendant's Reply (R. Doc. 15). After consideration of the parties' memoranda and the applicable law, the defendant's Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 9) is **GRANTED**.

## I.    **Factual Background**

ASE entered into a contract with Woodward Design + Build LLC ("Woodward") on October 24, 2016, to perform the electrical work on the Standard, a development project, at South Market District in New Orleans, Louisiana (the "Project").[1] Woodward entered into a contract with Domain Companies, LLC, to construct the Project.[2] Woodward also entered into a Rental Agreement and a Subcontract with Defendant Eagle Access, LLC ("Eagle") to rent two hoist units and to erect, dismantle,

---

[1] R. Doc. 1-2, p. 2.
[2] *Id.*

engineer, maintain, and test the hoist units.[3] On July 28, 2017, ASE employees and others were riding in the elevator car of one of the hoists provided by Eagle when the elevator car suddenly fell from the seventh story to the ground.[4] ASE alleges that it has incurred damages, such as the cost of responding to and investigating the incident, general conditions, overtime, increased labor, inefficiencies because of stacking of trades, increased labor because of wait times and extra stairs climbed, delays, and decreased productivity.[5] ASE claims that as a result of the incident, it was forced to accelerate other work to keep the Standard Project on schedule, causing further damages.[6] ASE sued Eagle Access, LLC, Division Management, LLC, Burlington Insurance Company, Eugene Sak, and Eagle Scaffolding and Equipment Company, Inc. in Civil District Court for the Parish of Orleans.[7] Defendant Burlington Insurance Company removed the action to this Court.[8]

Before leasing the commercial elevator hoist to Woodward in 2016, Defendant Division Management, LLC, purchased the assets of Defendant Eagle Access, and Eagle Access dissolved.[9] Division Management operates out of Eagle Access' former office in Florence, Alabama, employs Eagle Access' former personnel, and has used the trade name and identifiers of "Eagle Access," which are known in the industry.[10]

---

[3] *Id.* The parties stipulate that Defendant Division Management, LLC, is Eagle Access, LLC's de facto successor for these purposes.
[4] R. Doc. 1-2, pp. 2-3.
[5] R. Doc. 1-2, p. 3.
[6] *Id.*
[7] On November 25, 2019 Eagle Scaffolding and Equipment Company, Inc. was dismissed without prejudice for the plaintiff's failure to prosecute. R. Doc. 19.
[8] R. Doc. 1.
[9] R. Doc. 9-2, p. 2.
[10] *Id.*

Both Eagle Access and Division Management are being defended in this action by Defendant Burlington Insurance Company under the same commercial general liability policy issued to both entities.[11] Defendant Eugene Sak ("Sak") was the manager of Eagle Access.[12] He signed the elevator hoist leasing and installation contracts in Florence, Alabama, in his capacity as manager.[13]

Defendant Sak moves to dismiss the action against him for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).[14] In support of his motion, Defendant Sak provided an Affidavit that states that he has been a resident of Alabama for 34 years and has never lived in, or owned property or assets in, Louisiana. The Affidavit asserts that Division Management, LLC, a Delaware limited liability corporation with its principal place of business in Alabama, was organized as a single-member LLC, effective December 31, 2015. Shortly after it was organized, Division Management purchased the assets of Eagle Access and, during the transitional period, continued to do business as Eagle Access. Mr. Sak's Affidavit states that it was during this period that Division Management began to negotiate with Woodward for the lease of the two commercial elevator hoists for the Standard project. Sak asserts that he executed the "Man/Material Hoist Rental" agreements delivered by Woodward for the hoists in Florence, Alabama. A subcontract agreement was also signed by Sak as managing member of Eagle Access, LLC, in the Florence,

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] R. Doc. 9.

Alabama office. Mr. Sak advises that all documents were executed in his official capacity as managing member of Eagle Access/Division Management. He further advises that he never traveled to Louisiana to negotiate, execute, or perform these contracts or to conduct any business in Louisiana on behalf of Eagle Access. Sak asserts that he has only been in Louisiana twice in recent memory for social events— 2014 for Mardi Gras and Fall of 2018 for a football game—and once last Spring in Baton Rouge in his capacity as a representative of a different company to negotiate a contract unrelated to this action.[15] He contends that he has never conducted business in Louisiana in regard to the transactions for the Standard project.[16] Sak does not contest this Court's jurisdiction over Defendants Eagle Access and Division Management. Instead, relying on his uncontested Affidavit, Defendant Sak claims that this Court lacks personal jurisdiction over him in this matter.

In its Opposition, Plaintiff argues that this Court has specific jurisdiction over the defendant since the defendant created a continuing obligation with Woodward, the general contractor.[17] Further, Plaintiff argues that Eagle's "minimum contacts, including but not limited to performing a contract in Louisiana, can be imputed to its shareholder for jurisdictional purposes by 'piercing the corporate veil.'"[18] In support of this argument, plaintiff alleges that Mr. Sak did not follow formalities when he signed the contract on behalf of Eagle Access when Eagle Access had been dissolved.[19]

---

[15] R. Doc. 9-2, p. 3.
[16] *Id.*
[17] R. Doc. 10.
[18] *Id.*
[19] *Id.*

Plaintiff further alleges that Sak did not have any of his companies registered as a subcontractor with the Louisiana State Licensing Board for Contractors.[20]

## II.   **Legal Standard**

When a nonresident moves to dismiss for lack of personal jurisdiction, the burden of establishing jurisdiction belongs to the plaintiff.[21] The Court takes all uncontroverted allegations in the complaint as true and resolves conflicts in the plaintiff's favor.[22] The Court may consider affidavits, interrogatories, depositions, or any combination of the recognized methods of discovery.[23] The Court may exercise personal jurisdiction over a nonresident defendant only if two requirements are satisfied: (1) the forum state's long-arm statute confers personal jurisdiction; and (2) the exercise of jurisdiction does not exceed the boundaries of due process.[24] The limits of Louisiana's long-arm statute are co-extensive with the limits of constitutional due process, so the inquiry is simply whether this Court's exercise of jurisdiction over the defendant would offend due process.[25]

This Court has held that *International Shoe Co v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310 (1945) is the "canonical opinion" governing personal jurisdiction.[26] In *International Shoe*, the Supreme Court

---

[20] *Id.*
[21] *Hebert v. Wing Sale, Inc.*, 337 F. Supp. 3d 714, 717 (E.D. La. 2018) (citing *Luv N' Care v. Insta-Mix, Inc.*, 438 F. 3d 465, 469 (5th Cir. 2006)).
[22] *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).
[23] *Jobe v. ATR Marketing, Inc.*, 87 F.3d 751, 752 (5th Cir. 1996).
[24] *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270 (5th Cir. 2006).
[25] *Hebert*, 337 F. Supp. 3d at 717-18 (internal citations omitted).
[26] *Id.*

held that a "State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[27] Two categories of personal jurisdiction exist within the *International Shoe* framework: specific jurisdiction and general jurisdiction.[28] A court has specific jurisdiction over a defendant when the suit arises out of or relates to the defendant's contacts within the forum state.[29] A court has general jurisdiction over a foreign corporation when its affiliations within the State are "so continuous and systematic as to render them essentially at home in the forum State."[30] It does not appear that the plaintiff is arguing that the Court has general jurisdiction over the defendant.[31] An inquiry as to specific jurisdiction requires the Court to consider the relationship among the defendant, the forum, and the litigation.[32] "For a State to exercise jurisdiction consistent with due process, that relationship must arise out of contacts, that the 'defendant *himself* creates with the forum State."[33] "[T]he plaintiff cannot be the only link between the defendant and the forum."[34]

---

[27] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (internal quotation marks omitted).
[28] *Id.*
[29] *Hebert v. Wing Sale, Inc.*, 337 F. Supp. 3d 714, 718 (E.D. La. 2018) (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 754 (2014)).
[30] *Id.*
[31] R. Doc. 10.
[32] *Hebert*, 337 F. Supp. 3d at 718 (citing *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)).
[33] *Walden v. Fiore*, 571 U.S. 277, 284 (2014).
[34] *Walden*, 571 U.S. at 285.

The Fifth Circuit applies a three-step analysis for specific jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (citing *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). If Plaintiff ASE successfully establishes the first two prongs, then the burden shifts to Defendant Eugene Sak to show that exercising jurisdiction would be unfair or unreasonable.[35]

## III.   **Analysis**

The parties dispute the issue of specific jurisdiction over Defendant Sak—specifically whether Defendant Sak has sufficient minimum contacts with Louisiana. Defendant Sak contests that he has no personal involvement in any of the transactions or the incident at issue in this action.[36] He submits that he has resided in Alabama for 34 years, owns no real or personal property or assets in Louisiana, and that he has visited Louisiana in the past: once[37] in New Orleans for Mardi Gras; once[38] in Baton Rouge for a college football game; and once[39] last Spring in Baton Rouge in his capacity as a representative of a different company—to negotiate a

---

[35] *Id.*
[36] R. Doc. 9-2, p. 5.
[37] R. Doc. 9-2, p. 3, in which Defendant Sak states that he visited in 2014; R. Doc. 9-3, p. 3, in which Defendant Sak states that he visited in 2013. Whether the correct year is 2013 or 2014 is not at issue before the Court.
[38] *Id.*
[39] *Id.*

contract unrelated to this action. Defendant Sak states that he never travelled to Louisiana on behalf of the defendants in action.[40]

Defendant Sak avers he signed the elevator hoist leasing and installation contracts in Florence, Alabama, in his capacity as manager of Eagle Access.[41] He states that he did not sign any contracts in an individual capacity, he did not travel to Louisiana to negotiate, implement, or oversee the performance of these contracts, and he is not alleged to have personally caused or contributed to the incident in question.[42] The defendant argues that the plaintiff's allegations against him are bare and conclusory. The Court agrees.

Relying on *Lloyd's Syndicate 457 v. Am. Global Mar. In*c., 346 F. Supp. 3d 908, 929 (S.D. Tex. 2018), Plaintiff makes a "piercing the corporate veil" argument, stating that "Eugene Sak [did] not follow formalities in his company, Eagle Access, LLC, in fact he signed a contract in its name knowing that the company had been dissolved in 2016. Mr. Sak also represented that he was the manager of Eagle, knowing that it no longer existed."[43] The plaintiff also states, "The fact that Mr. Sak did not have the correct company listed on the contract smells of bad faith and/or fraud."[44] Defendant Sak rejoins, "Sak intended to execute 'Eagle Access' as a trade name designation for defendant Division Management; Division Management, a viable company with assets and general liability coverage defending both it and Eagle Access, concedes

[40] R. Doc. 9-2, pp. 2-3.
[41] R. Doc. 9-2, p. 2.
[42] *Id.*
[43] R. Doc. 10, p. 6.
[44] R. Doc. 10, pp. 6-7.

ultimately [sic] responsibility for any judgment against Eagle Access."[45] The Court finds plaintiff's reliance on *Lloyd's Syndicate 457* perplexing. Although the court in *Lloyd's* correctly holds, "In determining whether to pierce the [corporate] veil, Louisiana courts examine the totality of circumstances, taking into consideration any commingling of funds, failure to follow corporate formalities, undercapitalization, failure to keep separate accounts and records, and failure to hold regular shareholder and director meetings."[46] It also correctly states, "Only exceptional circumstances warrant the radical remedy of piercing the corporate veil."[47] Further, that court held, "Absent allegations of fraud or deceit, a plaintiff has the 'heavy burden of proving that the shareholders disregarded the corporate entity to such an extent that it ceased to become distinguishable from themselves."[48] There has been no such showing in this case. The Court does not find plaintiff's assertions that Defendant Sak did not follow corporate formalities rise to the level to such an extent that either Eagle Access or Division Management ceased to become distinguishable from Eugene Sak.

Defendant Sak argues that he cannot be held liable to the plaintiff simply by virtue of the fact that he was the managing member of Eagle Access/Division Management.[49] In fact, "[a] member, manager, employee, or agent of a limited

---

[45] R. Doc. 15, p. 2. R. Doc. 9-3, ¶ 5. "During the transitional period. Division Management continued to do business as the industry-recognized trade or brand name "Eagle Access" and routinely employed existing "Eagle Access" letterhead, stationary and identifiers." *Id*.

[46] *Lloyd's Syndicate 457*, 346 F. Supp. 3d at 929.

[47] *Id*.

[48] *Id*.

[49] R. Doc. 9-2, pp. 6-7.

liability company is not a proper party to a proceeding by or against a limited liability company, except when the object is to enforce such a person's rights against or liability to the limited liability company."[50] "As a general rule, an individual member is not personally responsible for the liabilities of an LLC beyond the member's capital contributions, with only specifically enumerated exceptions in cases of fraud, breach of professional duty, or other 'negligent or wrongful act."[51] Louisiana Revised Statutes § 12:1320(D) provides enumerated exceptions to the general rule that LLC members are not liable for the acts of the LLC:

> Nothing in this Chapter shall be construed as being in derogation of any rights which any person may by law have against a member, manager, employee, or agent of a limited liability company because of any fraud practiced upon him, because of any breach of professional duty or other negligent or wrongful act by such person, or in derogation of any right which the limited liability company may have against any such person because of any fraud practiced upon it by him.

*Id.* The plaintiff alleges that Defendant Sak's actions, for which Defendant Sak provides a plausible explanation, "smell" of bad faith or fraud.[52] The Plaintiff does not provide any documentation, affidavits, depositions or interrogatories to support this assertion. The Court finds that none of the plaintiff's threadbare allegations states a plausible claim of fraud, breach of a professional duty, negligence, or wrongful act against another within the meaning of Louisiana Revised Statutes § 12:1320(D).

---

[50] La. Rev. Stat. § 12:1320(C).
[51] *Audubon Real Estate Associates, L.L.C. v. Audubon Realty, L.L.C.*, 2016 WL 740467, at *2 (M.D. La. Feb. 24, 2016) (internal quotation marks and citation omitted).
[52] R. Doc. 10, pp. 6-7.

## IV.    CONCLUSION

Based on the foregoing, IT IS HEREBY ORDERED that Defendant Eugene Sak's Motion to Dismiss for Lack of Personal Jurisdiction (R. Doc. 9) is **GRANTED**. All of Plaintiff All Star Electric, Inc.'s claims against Defendant Eugene Sak are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this the 22nd day of April, 2020.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**